IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAITLIN C., a minor, by her mother and natural guardian, SHANNON M., Plaintiff, <br><br> v. <br><br> CHELTENHAM TOWNSHIP SCHOOL DISTRICT, Defendant. | CIVIL ACTION <br><br> NO. 07-2930 |

SURRICK, J.                                                    MARCH ___, 2010

## MEMORANDUM

Presently before the Court is Defendant Cheltenham Township School District's Motion to Dismiss Pursuant to FRCP 12(b)(6). (Doc. No. 5.) For the following reasons, the District's Motion will be granted.

### I. BACKGROUND

Plaintiff, Kaitlin C., is a minor who resides in the Cheltenham Township of Pennsylvania with her mother and natural guardian, Shannon M. (Compl. ¶ 1.) Defendant Cheltenham Township School District is an entity organized pursuant to the Public School Code of 1949, 24 Pa. Cons. Stat. § 1-101, *et seq.* (*Id.* ¶ 2.) The District receives federal funds and has been designated by Pennsylvania law and the Pennsylvania Department of Education to provide educational services to the residents of Cheltenham Township. (*Id.* ¶ 5.)

At the age of ten, Plaintiff was diagnosed with Turner Syndrome, a genetic disorder occurring only in females. (*Id.* ¶ 6.) Plaintiff was subsequently diagnosed with other medical conditions, including osteoporosis and Crohn's Disease, both of which commonly occur in individuals with

Turner Syndrome. (*Id.*) Beginning in September 2001 and continuing through the filing of the Complaint, Plaintiff's mother "provided the District with current medical information pertaining to Plaintiff's medical conditions, limitations, and restrictions." (*Id.* ¶ 7.)

Near the beginning of Plaintiff's freshman year at Cheltenham High School in 2005, the District was made aware that Plaintiff's medical conditions made it dangerous for her to participate in some physical activities, particularly those involving high impact to her bones and joints. (*Id.* ¶ 8.) Plaintiff's freshman roster included Physical Education, which, in the fall of 2005, involved playing basketball. (*Id.* ¶¶ 9-10.) Plaintiff told her teacher that she could not participate, and the teacher, who was not aware of Plaintiff's physical limitations, ridiculed her in front of her classmates. (*Id.* ¶ 10.) In response to this incident, Plaintiff's mother requested that the District make reasonable accommodations for Plaintiff by exempting her from participation in physical activities. (*Id.* ¶ 11.) The District granted the requests and placed Plaintiff in a class called Fitness for Life instead of Physical Education. (*Id.* ¶ 12.) In November 2005, the District implemented a comprehensive Individualized Education Program ("IEP") for Plaintiff, which addressed both her physical and mental needs. (*Id.* ¶ 13; *see also* Compl. Ex. A.) The IEP included an exemption for Plaintiff from Physical Education class. (Compl. ¶ 14.)

Plaintiff was again enrolled in Fitness for Life instead of Physical Education when she began her sophomore year in September 2006. (*Id.* ¶ 15-16.) On September 19, 2006, the District administered a physical fitness test to the students in the Fitness for Life class. (*Id.* ¶ 17.) During the test, Plaintiff performed a "shuttle run" and, during the course of the run, Plaintiff fell and severely injured her right ankle. (*Id.* ¶ 18.) On September 21, 2006, Plaintiff's Fitness for Life teacher visited Plaintiff in the hospital. (*Id.* ¶ 19.) While there, the teacher admitted to Plaintiff's mother that she

was not aware of Plaintiff's physical limitations or her exemption from physical activities. (*Id.*) Plaintiff's mother was later informed by Plaintiff's guidance counselor and Plaintiff's Vice Principal that they were not aware that the Fitness for Life class included physical activities. (*Id.* ¶ 20.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Iqbal*, the Supreme Court set forth a two-part analysis that district courts must conduct when reviewing a complaint challenged under Rule 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (describing *Iqbal*'s two-step inquiry). The district court must first separate "the factual and legal elements of a claim," accepting all of the complaint's well-pleaded facts as true but rejecting legal conclusions. *Id.* at 210 (citing *Iqbal*, 129 S. Ct. at 1949); *see also Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Under this analysis, well-pleaded factual allegations are to be given a presumption of veracity. *Iqbal*, 129 S. Ct. at 1950. The district court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. at 1950). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *Id.* By contrast, a complaint that demonstrates entitlement to relief through well-pleaded facts will survive a motion to dismiss. *See id.* Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a

3

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

## III. LEGAL ANALYSIS

Plaintiff's one-count complaint seeks money damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* The Rehabilitation Act prohibits recipients of federal funding, including schools, from discriminating on the basis of disability. Section 504 of the Act mandates that

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C § 794. A plaintiff asserting a violation of § 504 must prove four elements: (1) that she is "disabled" as defined by the Rehabilitation Act; (2) that she is otherwise qualified to participate in school activities; (3) that the school or school board receives federal financial assistance; and (4) that she was excluded from participation in, denied the benefits of, or subject to discrimination at the school. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803-04, 806 (3d Cir. 2007)); *see also Andrew M. v. Del. County Office of Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007); *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991).

The Complaint properly alleges facts sufficient to establish the first three elements of a § 504 violation. Plaintiff is disabled under the Act, *see* 29 U.S.C. § 705(20)(B); she is otherwise qualified

4

to participate in school activities; and the District receives federal funding. In addition, the Complaint alleges that District knew of Plaintiff's disabilities. Thus, the sole issue now before us is whether the Complaint adequately alleges the fourth element of a § 504 violation. The Complaint alleges that "[b]y administering a physical fitness test to [Plaintiff] . . . , [the] District failed to accommodate her disability and violated her rights under § 504 . . . ." (Compl. ¶ 26.) The regulations implementing § 504 require recipients of federal funding to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity." 45 C.F.R. § 84.12(a).

As an initial matter, Plaintiff's decision to frame the District's conduct as a failure to accommodate is interesting since there is no dispute here that the District provided Plaintiff with an IEP. (*See* Compl. Ex. A.) Moreover, there is no dispute about the adequacy of the IEP as it is structured. Rather, the dispute is over how the District and teachers at Cheltenham High School implemented the IEP. Normally, failure-to-accommodate claims are brought because a recipient of federal funding refuses or fails to provide reasonable accommodations to disabled persons. For example, in *Nathanson v. Medical College of Pennsylvania*, the plaintiff brought suit against the defendant-school for its refusal to provide her with special seating and parking arrangements to accommodate her disability. 926 F.2d at 1377. The court observed that if the defendant's "failure to provide a suitable seating arrangement makes its program effectively unavailable to a student with a back injury, then that failure could constitute the type of 'benign neglect' referred to in *Alexander* [*v. Choate*, 469 U.S. 287, 295 (1985)] and a violation of the Rehabilitation Act." *Id.* While a plaintiff could conceivably state § 504 claim arising out of the implementation of an IEP, in the instant case,

the observation is pertinent because the District's conduct, as alleged in the Complaint, does not appear to have excluded Plaintiff from participation, denied her a benefit, subjected her to discrimination, or refused her a reasonable accommodation. *See* 29 U.S.C § 794.

To the contrary, the District acknowledged Plaintiff's disability and developed an IEP that accommodated it by excusing her from Physical Education class. Even when viewed in the light most favorable to Plaintiff, the conduct does not appear to be a failure to accommodate. The operative facts in the Complaint establish that school officials were unaware that the Fitness for Life class included some physical activities like the fitness test that resulted in Plaintiff's injury. (*See* Compl. ¶ 20.) Thus, the Complaint appears to be an attempt to cast a negligence claim as a § 504 violation.[1] The harm that Plaintiff alleges supports this conclusion. The Complaint states that she "has suffered severe and permanent physical injuries and aggravation of her existing physical impairments . . . [as well as] emotional distress, pain, loss of life's pleasures, and damage to her earning capacity." (*Id.* ¶ 27.) However, we need not address the specific question of whether the negligent implementation of an IEP can form the basis of a § 504 claim because Plaintiff's damages allegations highlight a defect in the Complaint that precludes Plaintiff from proceeding with this

---

[1] A negligence claim against the school district would be problematic under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541 *et seq.* Under the act, local agencies, such as school districts, are immune from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541; *see also Tackett v. Pine Richland Sch. Dist.*, 793 A.2d 1022, 1025 (Pa. Commw. Ct. 2002) (affirming lower court's grant of summary judgment in favor of school district where the "alleged acts of negligence relate only to [a teacher's] failure to properly supervise the students or the classroom activity"). This grant of immunity is waived for a subset of negligence actions. 42 Pa. Cons. Stat. § 8542. That subset does not include the type of negligent supervision alleged in the Complaint. *See id.* (excluding (1) the operation of motor vehicles, (2) the care, custody or control of personal property, (3) the care, custody or control of real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) the care, custody or control of animals).

6

action.[2]

Plaintiffs seeking compensatory damages arising from a § 504 violation must allege that the conduct was intentional. *See, e.g., Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). Plaintiff argues that she does not need to allege intent, citing the Third Circuit's decision in *Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3d Cir. 1999). In *Ridgewood*, the court did indeed state that "a plaintiff need not prove that defendants' discrimination was intentional" in order to state a § 504 claim. *Id.* at 253; *see also Nathanson*, 926 F.2d at 1384; *NAACP v. Med. Ctr., Inc.*, 657 F.2d 1322, 1331-32 (3d Cir. 1981). But *Ridgewood* is unavailing. Section 504 covers a wide range of conduct and offers many remedies. There is no indication that the court's statement in *Ridgewood* was intended to apply to § 504 claims seeking compensatory damages.[3] The

---

[2] We note that the Spending Clause considerations that we discuss at greater length *infra* counsel against permitting the negligent implementation of an IEP to serve as the basis of a § 504 claim. *Cf. Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999) (noting that the Supreme Court has "declined the invitation to impose [Title IX] liability under what amount[s] to a negligence standard"); *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) ("[A] recipient may be held liable to third-party beneficiaries for intentional conduct that violates the clear terms of the relevant statute . . . but not for its failure to comply with vague language describing the objectives of the statute . . . ; and, if the statute implies that only violations brought to the attention of an official with power to correct them are actionable, not for conduct unknown to any such official . . . .") (citations omitted); *Bradley ex rel. Bradley v. Ark. Dep't of Educ.*, 301 F.3d 952, 956 (8th Cir. 2002) ("Allegations of negligence do not clear the hurdle set by the explicit language of section 504.") (citation and internal quotation marks omitted).

[3] The Third Circuit has acknowledged the existence of the issue in the context of Title IX claims, whose remedies, like the Rehabilitation Act remedies, are informed by Title VI. *See Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 787-89 (3d Cir. 1990), *overruled by Fitzgerald v. Barnstable Sch. Comm.*, 129 S. Ct. 788 (2009). In *Pfeiffer*, the court concluded that it need not decide whether discriminatory intent was necessary to an award of compensatory damages because the plaintiff had clearly set forth a claim of intentional discrimination. *Id.* at 788. As noted *infra*, the Supreme Court resolved the issue in the context of Title IX cases in *Gebser*, 524 U.S. 274, and *Davis*, 526 U.S. 629, holding that intent—which can be satisfied by a showing of deliberate indifference—is an essential element of claims seeking compensatory damages.

7

Rehabilitation Act's remedies provision and Supreme Court precedent support this reading of *Ridgewood*.

The remedies provision of the Rehabilitation Act provides that "[t]he remedies, procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 . . . ." 29 U.S.C. § 794a(a)(2); *see also Barnes*, 536 at 185 ("[T]he remedies for violations of . . . § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI . . . ."). Under Title VI, private individuals may only recover compensatory damages where they can show that the defendant's discriminatory conduct was intentional. *Guardians Ass'n v. Civil Serv. Comm'n of the City of N.Y.*, 463 U.S. 582, 584 (1983) (opinion of the Court by White, J.); *Alexander v. Sandoval*, 532 U.S. 275, 282-83 (2001). In *Guardians*, Justice White explains why compensatory damages are available only for intentional discrimination. Noting that Title VI invokes Congress's Spending-Clause power to place conditions on the grant of federal funds, Justice White observes that the Supreme Court has "indicated that 'make whole' remedies are not ordinarily appropriate in private actions seeking relief for violations of statutes passed by Congress pursuant to its 'power under the Spending Clause to place conditions on the grant of federal funds.'" *Guardians*, 463 U.S. at 597 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 15 (1981)). He explains that

> [t]his is because the receipt of federal funds under typical Spending Clause legislation is a consensual matter: the State or other grantee weighs the benefits and burdens before accepting the funds and agreeing to comply with the conditions attached to their receipt. Typically, before funds are advanced, the appropriate federal official will determine whether the grantee's plan, proposal, or program will satisfy the conditions of the grant or other extension of federal funds, and the grantee will have in mind what its obligations will be. When in a later private suit brought

8

by those for whose benefit the federal money was intended to be used it is determined, contrary to the State's position, that the conditions attached to the funds are not being complied with, it may be that the recipient would rather terminate its receipt of federal money than assume the unanticipated burdens.

*Id.*; *see also Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 74 (1992) (White, J.) (Title IX) ("The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary aware.") (citation omitted).[4] Justice White observes that "[s]ince the private cause of action under Title VI is one implied by the judiciary rather than expressly created by Congress, [courts] should . . . take care in defining the limits of this cause of action and the remedies available thereunder" and concludes that "the relief in private actions should be limited to declaratory and injunctive relief . . . [and] relief in the form of money or otherwise based on past unintentional violations should be withheld." *Guardians*, 463 U.S. at 597.

In *Barnes v. Gorman*, the Supreme Court applied the same reasoning to Rehabilitation Act claims in the context of punitive damages. 536 U.S. at 185. The Court noted that "[a] funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.* at 188. It went on to hold that since punitive damages are not generally available for breach of

---

[4] *Cf. Gerbser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283-90 (1998) (explaining that "[b]ecause the private right of action under Title IX is judicially implied, [the Supreme Court has] a measure of latitude to shape a sensible remedial scheme that best comports with the statute," and that "[a]s a general matter, it does not appear that Congress contemplated unlimited recovery in damages against a funding recipient where the recipient is unaware of discrimination in its programs"); *Davis*, 526 U.S. at 642 (stating that in *Gerbser* the Court "concluded that the [school] district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge").

9

contract and since Title VI makes no mention of remedies, punitive damages are unavailable for § 504 violations. *Id.* at 187-88. While the Court conceded that compensatory damages are generally available for breach of contract, *id.* at 187, it did not elaborate, leaving no room for the concession to serve as a basis for circumventing the Court's prior holding that "private individuals [cannot] recover compensatory damages under Title VI except for intentional discrimination," *see Sandoval*, 532 U.S. at 282-83.[5]

When read together, *Guardians*, *Sandoval*, and *Barnes* make it clear that intentional discrimination is a necessary element of a § 504 claim for compensatory damages. This conclusion is supported by a number of circuit court decisions that have determined that compensatory damages are an appropriate remedy of a § 504 violation only upon a showing of intentional discrimination.[6]

---

[5] In *Barnes*, the Kansas City Police Department arrested the plaintiff, who was paraplegic, and transported him in a vehicle that was not equipped to safely accommodate people in wheel chairs. 528 U.S. at 183-184. The plaintiff suffered a number of serious injuries on the way to the police station. *Id.* at 184. After a trial, a jury awarded him $1 million in compensatory damages. *Id.* The Court's recitation of the facts makes no mention of an intent requirement, and neither do the opinions of the appellate or district courts. *See generally id.*; *see also Gorman v. Easley*, 257 F.3d 738 (8th Cir. 2001); *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998); *Gorman v. Easley*, No. 95-0475, 1999 U.S. Dist. LEXIS 2357 (W.D. Mo. Oct. 28, 1999); *Gorman v. Bartch*, 925 F. Supp. 653 (W.D. Mo. 1996); *Gorman v. Bishop*, 919 F. Supp. 326 (W.D. Mo. 1996). We note, however, that the narrow issue before the Court was the availability of punitive damages. The issue of the intent requirement does not appear to have been raised in the trial court, the appellate court, or the Supreme Court.

[6] *See, e.g., Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) ("[P]laintiffs must prove a *mens rea* of 'intentional discrimination,' to prevail on a § 504 claim . . . ."); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003) ("[P]rivate individuals may recover compensatory damages under § 504 and Title II only for intentional discrimination."); *Delano-Pyle*, 302 F.3d at 574 ("A plaintiff asserting a private cause of action for violations of the . . . [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination." (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984))); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) ("[E]ntitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff."); *Wood v. President & Trs. of Spring Hill*

By contrast, we have been unable to find any decisions that have explicitly allowed a plaintiff to obtain compensatory damages for a § 504 violation in the absence of a showing of intentional discrimination.

The Third Circuit's decision in *Ridgewood* does not alter this analysis. The court's statement that "a plaintiff need not prove that [a] defendants' discrimination [is] intentional" does not contradict or even consider the rule that a plaintiff seeking compensatory damages must allege intentional discrimination. *See* 172 F.3d at 253. Compensatory damages and their relationship to intentional discrimination were not at issue in *Ridgwood*. Moreover, they were not directly at issue in the cases upon which the court in *Ridgewood* relied. *See id.* (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995)); *see also Nathanson*, 926 F.2d at 1380; *Choate*, 469 U.S. at 295. The genesis of the court's statement appears to have been the Supreme Court's observation in *Alexander v. Choate* that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference —of benign neglect." 469 U.S. at 295; *see also Nathanson*, 926 F.2d at 1380 (quoting *Choate*, 469 U.S. at 295). We are aware of no court that has interpreted the language in *Choate* as altering the discriminatory intent requirement for plaintiffs seeking compensatory damages.

Having determined that allegations of discriminatory intent are necessary to § 504 claims

---

*Coll.*, 978 F.2d 1214, 1219-20 (11th Cir. 1992) ("[C]ontrolling precedent on Title VI remedies, made applicable to section 504 actions under the Rehabilitation Act, indicates that compensatory damages are precluded in cases of unintentional discrimination, but are permissible on a showing of intentional discrimination."). *See also L.T. v. Mansfield Twp. Sch. Dist.*, No. 04-1381, 2009 U.S. Dist. LEXIS 21737, at *19 (D.N.J. Mar. 17, 2009) ("[I]n order to obtain compensatory damages for a . . . Rehabilitation Act violation, a plaintiff must demonstrate intentional discrimination.") (citations omitted). For a thorough exploration of the Supreme Court's § 504 damages jurisprudence, see *Sheely v. MRI Radiology Network*, 505 F.3d 1173, 1190-98 (11th Cir. 2007).

11

seeking compensatory damages, we note that courts are split on what a plaintiff must show to meet the intent requirement. Some courts have adopted a deliberate indifference standard while other courts have adopted a gross misjudgment or bad faith standard. *Compare Lemahieu*, 513 F.3d at 938 (deliberate indifference), *with Bradley*, 301 F.3d 956 (bad faith and gross misjudgment), *and Saltzman v. Bd. of Comm'rs of the N. Broward Hosp. Dist.*, 239 F. App'x 484, 487 (11th Cir. 2007) (non-precedential) (noting that the Eleventh Circuit has not "not determined whether 'intentional discrimination' should be evaluated under the 'deliberate indifference' standard, or under a more stringent standard, such as 'discriminatory animus'"). *But cf. Gerbser*, 524 U.S. at 290 (imposing deliberate indifference standard in Title IX cases arising from allegations of sexual harassment by a school employee). We need not now address the issue of what conduct is sufficient to satisfy the intent requirement because Plaintiff's Complaint is devoid of allegations regarding intent of any sort. Since there are no such allegations, the Complaint fails to state a claim and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the District's Motion to Dismiss will be granted.

An appropriate Order follows.

BY THE COURT:

R. Barclay Surrick, J.